1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   CORTINA INTEGRATED WASTE            No. 2:24-cv-03014 WBS AC
     MANAGEMENT, INC.
13
                  Plaintiff,
14
          v.                            MEMORANDUM AND ORDER RE:
15                                       CROSS-MOTIONS FOR SUMMARY
                                         JUDGMENT
16   UNITED STATES DEPARTMENT OF THE
     INTERIOR, *et al.*,
17
                  Federal Defendants, and
18

19   KLETSEL DEHE WINTUN NATION OF THE
     CORTINA RANCHERIA,
20
                  Defendant-Intervenor.
21

22

23

24

25                          ----oo0oo----

26        Plaintiff Cortina Integrated Waste Management, Inc.

27   ("CIWMI") brought this action against the United States

28

1

1  Department of the Interior, the Bureau of Indian Affairs ("BIA"),

2  the Interior Board of Indian Appeals ("IBIA"), and agency

3  employees (together, the "federal defendants") alleging that the

4  IBIA violated the Administrative Procedure Act ("APA") by

5  arbitrarily and capriciously affirming the BIA's decision to

6  terminate a lease between CIWMI and defendant-intervenor Kletsel

7  Dehe Wintun Nation of the Cortina Rancheria (the "Tribe").

8  (First. Am. Compl. ("FAC") (Docket No. 1).)  Plaintiff, the

9  federal defendants, and the Tribe have moved for summary judgment

10  on plaintiff's sole claim under the APA. (Docket Nos. 22, 27,

11  28.)

12  I.   Factual and Procedural Background

13        This dispute traces its origins to 1995, when CIWMI and

14  the Tribe first entered into a lease.  (Administrative Record

15  ("AR") 1350).  Pursuant to this lease, the Tribe would provide

16  land on its reservation upon which CIWMI would develop, build,

17  and operate a waste management facility.  (See id.)  The lease

18  was amended, restated, and approved by the BIA in October 2000.

19  (Id. at 1350, 4169.)  The BIA affirmed its approval of the lease

20  in 2003 following an unsuccessful challenge by the County of

21  Colusa.  (Id. at 1349.)

22        CIWMI and the Tribe executed a second amended lease

23  that made "technical and updating amendments that d[id] not

24  affect the business terms of the [original] lease" in April 2003.

25  (Id. at 4099, 4104).  The BIA approved the second amended lease

26  in January 2007.  (Id. at 4099.)

27        Several provisions of the second amended lease underlie

28  the instant action.  (See id. at 4099.)  The court describes

1    these provisions before turning to the procedural history of the

2    parties' dispute.

3         a.    <u>The Lease</u>

4              The lease contained an initial term of 25 years with an

5    option for CIWMI, at its sole discretion, to renew the lease for

6    an additional 25 years.  (<u>Id.</u> at 1350, 3285, 4118.)  While the

7    lease did not include any concrete deadlines for performance, it

8    included a clause stating that "time is agreed to be of the

9    essence in the performance of each of the terms and conditions of

10   the [l]ease."  (<u>Id.</u> at 4245, 4149.)

11             The lease enumerated events of default permitting its

12   termination, including CIWMI's "default in the performance of any

13   material covenant . . . to be performed or observed pursuant to

14   the terms of this Lease."  (<u>Id.</u> at 4149-50.)  The lease also

15   specified that "[t]he failure of CIWMI to comply" with any of its

16   obligations shall not constitute an event of default "if the

17   failure results from [e]xcusable [d]elay."  (<u>Id.</u> at 4152.)  The

18   lease defined "[e]xcusable delays" as "any cause or condition

19   beyond a party's control which such party is unable to overcome

20   by the exercise of reasonable diligence or effort, including but

21   not limited to" conditions such as "major fire, flood, . . . and

22   other acts of the elements," "prohibitory . . . action by any

23   civil or military authority," "incapacitating labor dispute[s],"

24   "riot, insurrection, sabotage, or war," and "massive breakdown of

25   or damage to any facilities or equipment . . ."  (<u>Id.</u> at 4107.)

26             The lease also provided that "[t]he parties agree to

27   cooperate fully with each other and to act reasonably, in good

28   faith, and in a timely manner."  (<u>Id.</u> at 4118.)

3

1    Lastly, the lease stated that it "shall be construed
2  according to the principles of the contract laws of the State of
3  California."  (Id. at 4161.)

4    b.   Procedural History

5    In 2013, the Tribe asked the BIA to terminate the lease
6  on the grounds that CIWMI violated a warranty under the lease
7  regarding adverse litigation.  (See FAC at 15.)  The BIA agreed
8  and issued a notice of cancellation on August 19, 2013.  (Id. at
9  15-16.)  CIWMI successfully appealed the BIA's notice of
10 cancellation to the IBIA, which concluded that the "the grounds
11 on which the [BIA] cancelled the Lease [we]re unsupported by the
12 terms of the Lease and the administrative record."  (Id. at 16.)
13 The lease remained effective during the pendency of the IBIA
14 appeal.  25 C.F.R. § 162.470(b).

15    On July 10, 2018, the Tribe sent the BIA a second
16 request to terminate the lease arguing that "[u]nder the terms of
17 the lease and applicable law, CIWMI's failure to complete the
18 [p]roject within a reasonable period of time constitutes grounds
19 for termination."  (AR 4349.)  Specifically, the Tribe contended
20 CIWMI's failure to timely construct the facility was a material
21 breach of the lease that could not be cured within a reasonable
22 time and therefore merited termination of the lease.  (See id. at
23 4352-57.)  The BIA agreed and issued a Notice of Decision and
24 Termination on March 1, 2019, in which it concluded that CIWMI
25 had materially breached the "time is of the essence" clause.
26 (Id. at 1337.)  CIWMI appealed the BIA's decision on April 4,
27 2019.  (Id. at 1342.)

28

4

1       On June 27, 2024, the IBIA, too, found CIWMI had
2  materially breached the lease's "time is of the essence" clause
3  and accordingly affirmed the BIA's decision to terminate the
4  lease.  (Id. at 0012, 0039-42.)   The IBIA concluded CIWMI was
5  required to perform its obligations under the lease within a
6  reasonable time (id. at 0016-17); a reasonable time for
7  performance consisted of between 10 to 17 years (id. at 0021-23);
8  CIWMI did not and could not meet this deadline for performance
9  (id. at 0023-29); CIWMI's delay was not excused by delays in
10 obtaining the regulatory approval required to build the facility
11 or by any actions of the Tribe (id. at 0029-35); and CIWMI's
12 delays constituted a material breach of the lease's "time is of
13 the essence" clause, warranting termination (id. at 0036-39.)

14      CIWMI now challenges the IBIA's decision under the APA,
15 5 U.S.C. § 701 et seq.

16 II.  Legal Standard

17      "A motion for summary judgment may be used to review
18 agency administrative decisions within the limitations of the
19 APA."  Yu An v. Napolitano, 15 F. Supp. 3d 976, 981 (N.D. Cal.
20 2014).  Ordinarily, summary judgment is proper "if the movant
21 shows that there is no genuine dispute as to any material fact
22 and the movant is entitled to judgment as a matter of law."  Fed.
23 R. Civ. P. 56(a).  However, when a "[p]laintiff challenges the
24 final decision of an administrative agency, the Court does not
25 utilize the standard analysis for determining whether a genuine
26 issue of material fact exists."  California RSA No. 4 v. Madera
27 Cnty., 332 F. Supp. 3d 1291, 1301 (E.D. Cal. 2003) (Snyder, J.).
28

5

1    Instead, a court determines "whether or not as a matter of law
2    the evidence in the administrative record permitted the agency to
3    make the decision it did." Occidental Eng'g Co. v. I.N.S., 753
4    F. 2d 766, 769 (9th Cir. 1985).

5         Under the APA, a reviewing court must uphold an agency
6    action unless it is found to be "arbitrary, capricious, an abuse
7    of discretion, or otherwise not in accordance with the law."  5
8    U.S.C. § 706(2)(A).  "This deferential standard is designed to
9    ensure that the agency considered all of the relevant factors and
10   that its decision contained no clear error of judgment." Pac.
11   Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries
12   Serv., 265 F. 3d 1028, 1034 (9th Cir. 2001) (citation and
13   quotation marks omitted).

14        Accordingly, "[a]gency action should be overturned only
15   when the agency has 'relied on factors which Congress has not
16   intended it to consider, entirely failed to consider an important
17   aspect of the problem, offered an explanation for its decision
18   that runs counter to the evidence before the agency, or is so
19   implausible that it could not be ascribed to a difference in view
20   or the product of agency expertise.'" Id. (quoting Motor Vehicle
21   Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43
22   (1983)).  The court must thus "ask whether the agency considered
23   the relevant factors and articulated a rational connection
24   between the facts found and the choice made." Nat. Res. Def.
25   Council v. U.S. Dep't of the Interior, 113 F. 3d 1121, 1124 (9th
26   Cir. 1997) (citation and quotation marks omitted).

27        "[W]e review an agency's factual findings for support
28   by substantial evidence." Louisiana-Pac. Corp., W. Div. v.

1  N.L.R.B., 52 F. 3d 255, 258 (9th Cir. 1995).  Under this

2  standard, "we must defer to the agency's finding[s] . . . unless

3  the evidence in the record would compel a reasonable finder of

4  fact to reach a contrary result."  Ursack Inc. v. Sierra

5  Interagency Black Bear Grp., 639 F. 3d 949, 958 (9th Cir. 2011)

6  (emphasis in original).  Put differently, "[i]f the evidence is

7  susceptible to more than one rational interpretation, we may not

8  substitute our judgment for that of the agency."  Gebhart v.

9  S.E.C., 595 F. 3d 1034, 1043 (9th Cir. 2010).  Further, "[w]hen

10 determining if substantial evidence supports an agency's factual

11 finding, 'weighing the evidence is not the court's function.'"

12 Dist. Hosp. Partners, L.P. v. Sebelius, 932 F. Supp. 2d 194, 199

13 (D.D.C. 2013) (quoting United Steel, Paper & Forestry, Rubber,

14 Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v.

15 Pension Ben. Guar. Corp., 707 F. 3d 319, 325 (D.C. Cir. 2013)).

16 III. Discussion

17        CIWMI argues the IBIA's order erroneously determined

18 that (1) the lease required CIWMI to build and begin operating

19 the waste management facility within the "reasonable time,"

20 which, given the circumstances, was 10 to 17 years; (2) CIWMI

21 failed to fulfill this obligation and accordingly committed a

22 material breach of a material term of the lease; and (3) CIWMI's

23 delays were not "excusable delays" as defined by the lease.  (See

24 Docket No. 22-1 at 20-21.)  The court addresses each contention

25 in turn.

26        a.    Time for Performance

27              i.    Reasonable Time Requirement

28

1    CIWMI first argues the IBIA "erroneously held that the
2    lease required CIWMI to build and begin operating the facility
3    within a 'reasonable time.'"  (Docket No. 22-1 at 20.)  The lease
4    terms provide that California law governs.  (AR 4161.)

5    Under California law, "[i]t is well-established that
6    where a contract does not specify a time for performance, the
7    party is obliged to perform within a reasonable time." Jarose v.
8    Cnty. of Humboldt, No. 18-cv-07383 RS, 2022 WL 1601407, at *21
9    (N.D. Cal. Mar. 17, 2022); see also Henry v. Sharma, 154 Cal.
10   App. 3d 665, 669, 201 Cal. Rptr. 478, 480 (Ct. App. 1984).

11   The IBIA concluded that, under California law, in the
12   absence of a deadline for performance specified within the lease,
13   CIWMI was required to build and begin operating the waste
14   management facility within a reasonable time.  (AR 0017-0019.)
15   The IBIA's conclusion that CIWMI was required to build and begin
16   operating the facility within a reasonable time was correct as a
17   matter of law, see, e.g., Jarose, 2022 WL 1601407, at *21, and
18   therefore was not arbitrary and capricious.  Cf. Warmuth v.
19   F.D.I.C., No. cv-08-06222 MMM AJWX, 2011 WL 5553897, at *12 (C.D.
20   Cal. Nov. 14, 2011) (because agency's findings were correct,
21   "agency did not act arbitrarily or capriciously.").

22   ii.  What Constitutes a Reasonable Time
23   CIWMI next argues the IBIA's determination that 10 to
24   17 years constituted a reasonable time to build and begin
25   operating the facility was also arbitrary and capricious.  (See
26   Docket No. 22-1 at 22-23.)

27   "What constitutes a 'reasonable time' for performance
28   is a question of fact" that "depends on the circumstances of each

8

1   case." <u>Consol. World Invs., Inc. v. Lido Preferred Ltd.</u>, 9 Cal.
2   App. 4th 373, 380, 11 Cal. Rptr. 2d 524 (1992). As explained
3   above, we review agencies' factual findings deferentially. <u>See,</u>
4   <u>e.g.</u>, <u>Ursack</u>, 639 F. 3d at 958.

5       The IBIA first affirmed the BIA's conclusion that a
6   "reasonable time" for performance must be less than 25 years.
7   (AR 0021-22.) The IBIA found reasonable the BIA's conclusion
8   that, because the lease provided an initial term of 25 years, the
9   parties meant for the facility to be operational in less than 25
10  years to avoid "leaving little opportunity for benefits to accrue
11  to the Tribe." (<u>Id.</u>)

12      Next, the IBIA found that the BIA relied on substantial
13  evidence, including an expert report, to rationally conclude that
14  the facility should have taken between 10 and 17 years to
15  construct. (<u>Id.</u> at 0022.) The expert report was prepared by the
16  Tribe's consultant, Tetra Tech. (<u>Id.</u>) At the time of the
17  report's commission, Tetra Tech possessed "more than 30 years of
18  experience in the permitting, design, and construction of solid
19  waste landfill facilities in California." (<u>Id.</u>) Tetra Tech
20  determined that a reasonable time for building and opening the
21  facility would be 10 to 17 years. (<u>Id.</u>)

22      Tetra Tech arrived at this determination by considering
23  the amount of time it would take to (1) determine a regulatory
24  framework for obtaining necessary approvals and conduct a
25  financial feasibility study; (2) develop a basis of design for
26  the facility; (3) perform an engineering analysis; (4) prepare a
27  preliminary facility design; (5) prepare a project description;
28  (6) initiate a public relations campaign; (7) complete review

1   under the California Environmental Quality Act ("CEQA") and the

2   National Environmental Policy Act ("NEPA"); (8) obtain a

3   conditional use permit if necessary; (9) obtain other required

4   permits; (10) and construct and open the facility.  (See id. at

5   4593-4601.)  Tetra Tech estimated that it would take between one

6   to two years to accomplish items (1) through (5); three to five

7   years to accomplish items (6) through (8); two to three years to

8   accomplish item (9); and one to two years to accomplish item

9   (10), assuming adequate water supply and access to the facility.

10  (See id. at 4593-94.)

11          In preparing its report and the estimates therein,

12  Tetra Tech relied on site-specific documentation such as studies

13  regarding the construction of the facility, environmental review

14  documents, the lease between CIWMI and the Tribe, and

15  correspondence from various agencies.  (See id. at 4589.)  For

16  example, Tetra Tech conducted a detailed analysis of the

17  project's various regulatory requirements and found that

18  developing a "coalition of agencies" (state and federal) whose

19  approvals were necessary to construct the facility would have

20  "laid a foundation for an efficient . . . review and approval

21  process" that would have enabled CIWMI to comply with applicable

22  regulations "concurrently," thereby saving significant time.

23  (Id.)

24          Tetra Tech drew upon its decades of expertise in the

25  construction of similar landfill facilities in California to

26  estimate that it typically takes between one to two years to

27  construct and open any landfill facility in California, assuming

28  adequate water supply and access to the facility.  (Id. at 4569,

4593.)  Tetra Tech also relied on its experience obtaining the required "permitting" for landfill facilities in California (id. at 4569) in finding that the additional "layer of permitting and approvals" required from entities such as the EPA and the County of Colusa because the facility was to be constructed on tribal lands would necessitate three to five more years of time for the facility to be built and operationalized.  (Id. at 4594.)

The BIA "independently reviewed" Tetra Tech's time estimate and found it to be "reasonable" based on the "BIA's experience with approvals for complex and controversial projects on Indian Lands in California."  (Id. at 0022-23.)  "Taking all of this together," the IBIA concluded the BIA had "rationally decided" that "it should have taken between 10 and 17 years to build and begin operating" the facility "based on substantial evidence in the administrative record."  (Id. at 0023.)

The evidence in the record does not compel the court to overturn the IBIA's finding that 10 to 17 years was a reasonable time for CIWMI to build and begin operating the facility.  See Ursack, 639 F. 3d at 958.  CIWMI argues that the IBIA erred by failing to consider "the duration of the lease, the substantial delay by the regulatory agency, and the Tribe's lack of good faith and multiple attempts to terminate the lease."  (Docket No. 22-1 at 23.)

But the IBIA did consider these factors (see AR 0021-22, 0030-33), so CIWMI's frustration appears to be that, in doing so, the IBIA did not reach the result CIWMI advocates.  At bottom, CIWMI's contention is that the IBIA arbitrarily and capriciously determined the duration of a "reasonable time"

11

1   because it "failed to properly weigh the substantial evidence in

2   the record demonstrating the steps CIWMI ha[d] taken to obtain

3   the required permits and the means by which EPA's delay and the

4   Tribe's failure to proceed in good faith blocked CIWMI's

5   progress."  (Docket No. 22-1 at 23.)   This argument is unavailing

6   because "weighing the evidence is not the court's function."

7   Dist. Hosp. Partners, 932 F. Supp. 2d at 199.

8          Accordingly, because the IBIA's determination that a

9   "reasonable time" for performance was 10 to 17 years is supported

10  by substantial evidence, the IBIA did not act arbitrarily and

11  capriciously in making that determination.  Cf. Ursack, 639 F.3d

12  at 958 n.4 ("[A]s a practical matter, the arbitrary and

13  capricious standard incorporates the substantial evidence

14  test.").

15       b.  Material Breach

16          CIWMI also argues that the IBIA incorrectly interpreted

17  the lease's "time is of the essence" clause.  (Docket No. 22-1 at

18  30.)   CIWMI does not dispute that the "time is of the essence"

19  clause is a material term.  (See id. at 32 (referring to the

20  "time is of the essence" clause as "the material term at issue

21  here.").)

22          "California law provides that delayed performance of a

23  contract with a 'time is of the essence' clause constitutes a

24  material breach."  SIC Metals, Inc. v. Hyundai Steel Co., 838 F.

25  App'x 315, 316 (9th Cir. 2021) (citing Johnson v. Alexander, 63

26  Cal. App. 3d 806, 134 Cal. Rptr. 101, 105 (1976), and Plotnik v.

27  Meihaus, 208 Cal. App. 4th 1590, 146 Cal. Rptr. 3d 585, 596

28  (2012)).  "Normally the question of whether a breach of an

1  obligation is a material breach, so as to excuse performance by

2  the other party, is a question of fact." Brown v. Grimes, 192

3  Cal. App. 4th 265, 277, 120 Cal. Rptr. 3d 893, 903 (2011)

4  (collecting cases).  Again, our review of an agency's factual

5  findings is deferential.  See, e.g., Ursack, 639 F. 3d at 958.

6       The IBIA affirmed the BIA's holding that CIWMI

7  materially breached the lease by failing to "build and begin

8  operating th[e] [facility] within a reasonable time."  (AR 0036.)

9  Specifically, the IBIA reviewed de novo and affirmed the BIA's

10 findings that (1) the "time is of the essence" clause was a

11 material term of the lease (id. at 0036-37), and (2) CIWMI

12 materially breached this clause by failing to perform within a

13 reasonable time (id. at 0037-38.)  In the alternative, the IBIA

14 found CIWMI committed a material breach of this clause because it

15 failed to perform substantially:  CIWMI had not "built any

16 significant part of the landfill and ha[d] not obtained any of

17 the necessary permits."  (Id. at 0038.)

18      The IBIA's findings were supported by substantial

19 evidence.  See Louisina-Pac. Corp., 52 F.3d at 258.  As explained

20 in the previous section, the IBIA rationally concluded that a

21 "reasonable time" for performance was 10 to 17 years.  And the

22 IBIA rationally determined that, based on the evidence in the

23 record, CIWMI failed to perform within that time and thereby

24 breached the "time is of the essence" clause.  See SIC Metals,

25 838 F. App'x at 316.  Although CIWMI disputes that it materially

26 breached the "time is of the essence" clause because it had

27 "undertaken significant activities throughout the duration of the

28 lease to advance the permitting of the facility" (Docket No. 22-1

13

1    at 31), the "evidence in the record" does not "compel a

2    reasonable finder of fact to reach [that] result," Ursack, 639

3    F.3d at 958 (emphasis removed).  Accordingly, we must "defer to

4    the agency's finding[s]" on this point.  See id. [1]

5          In the alternative, CIWMI argues the "time is of the

6    essence" clause is not enforceable because enforcing it would

7    "work a forfeiture" against CIWMI or allow the Tribe to "reap a

8    windfall."  (Docket No. 22-1 at 32.)  California law enables

9    courts to decline to enforce "time is of the essence" clauses if

10   enforcing them would "work a forfeiture" on a party that has

11   substantially performed or allow the non-breaching party to reap

12   a "windfall."  See, e.g., Magic Carpet Ride LLC v. Rugger Inv.

13   Grp., L.L.C., 41 Cal. App. 5th 357, 369, 254 Cal. Rptr. 3d 213,

14   221 (2019).

15         The IBIA found enforcing the "time is of the essence"

16   clause here would not "work a forfeiture" on CIWMI because

17   "almost nothing ha[d] been built and no permits ha[d] been

18   obtained," and, correspondingly, any "alleged forfeiture" would

19   not "accrue to the benefit of the [Tribe]."  (AR 0038.)

20   Similarly, the IBIA found enforcing the clause would not permit

21   the Tribe to reap a "windfall" because the Tribe had thus far

22   _____

23         [1]    While the lease specifies, and the parties agree, that
     California law governs subject to preemption by federal or tribal
24   law, federal regulations provide that a lease on tribal land can
     be cancelled for any "violation," irrespective of its
25   materiality.  25 C.F.R. § 162.467(c).  25 C.F.R. § 162.003
     provides that the materiality-indifferent definition of
26   "violation" in 25 C.F.R. § 162.467(c) governs regardless of how
     "violation" or "default" is defined within the lease.
27   Accordingly, termination of the lease was appropriate here
     regardless of whether CIWMI materially breached the lease under
28   California law.

1    been "deprived of the economic benefit that it reasonably

2    expected."  (Id.)  In making these findings, the IBIA "considered

3    the relevant factors and articulated a rational connection

4    between the facts found and the choice made."  Nat. Res. Def.

5    Council, 113 F.3d at 1124.  Accordingly, the IBIA's decision to

6    enforce the "time is of the essence" clause was also not

7    arbitrary and capricious.  See id.

8            c.    Excusable Delay

9            CIWMI last argues that the IBIA improperly determined

10   that the project's myriad delays did not constitute excusable

11   delays because neither (1) the amount of time it took the EPA to

12   review CIWMI's request to construct the facility, nor (2) the

13   Tribe's purported failure to act in good faith was listed as an

14   excusable delay within the lease.  (Docket No. 22-1 at 24.)

15           The lease defines an "excusable delay" as "any cause or

16   condition beyond a party's control which such party is unable to

17   overcome by the exercise of reasonable diligence or effort,

18   including but not limited to" conditions such as "major fire,

19   flood, . . . and other acts of the elements," "prohibitory . . .

20   action by any civil or military authority," "incapacitating labor

21   dispute[s]," "riot, insurrection, sabotage, or war," and "massive

22   breakdown of or damage to any facilities or equipment . . ."  (AR

23   4107.)

24           California courts have interpreted similar provisions

25   narrowly, finding only the conditions expressly listed

26   constituted excusable delays.  See, e.g., City of Stockton v.

27   Stockton Plaza Corp., 261 Cal. App. 2d 639, 561, 68 Cal. Rptr.

28   266, 274 (1968); Free Range Content, Inc. v. Google Inc., No. 14-

1   cv-02329-BLF, 2016 WL 2902332, at *6 (N.D. Cal. May 13, 2016)

2   (applying California law).  And in general, "[f]orce majeure

3   clauses are construed narrowly and will generally only excuse a

4   party's nonperformance if the event that caused the party's

5   performance is specifically identified."  30 Richard A. Lord,

6   Williston on Contracts § 77:31 (4th ed. & Supp. 2024).

7        The IBIA, relying on Stockton, determined the EPA's

8   regulatory delay was not excusable because it (1) was not

9   explicitly listed as an event of excusable delay in the lease,

10  and (2) did not otherwise constitute a force majeure condition.

11  (See AR 0030.)  Stockton featured a virtually identical excusable

12  delay clause.  See 261 Cal. App. 2d at 651.  Pursuant to that

13  clause, the court held that a party's delay in obtaining required

14  financing was not excusable because the reason for the party's

15  delay was not an event listed in the contract as an excusable

16  delay.  Id. at 646-50.  Given the overlap between Stockton and

17  the instant dispute, the IBIA did not arbitrarily and

18  capriciously conclude that, under Stockton, the EPA's regulatory

19  delay was not excusable.  Cf. M&T Farms v. Fed. Crop Ins. Corp.,

20  103 F.4th 724, 731 (9th Cir. 2024), cert. denied, 145 S. Ct. 1057

21  (2025) ("afford[ing] considerable deference" to an agency's

22  "reasonable interpretation" of a contractual provision).

23       The IBIA next concluded the Tribe's purported failure

24  to act in good faith was not an excusable delay.  To reach this

25  conclusion, the IBIA addressed the implications of the Tribe's

26  ineffective attempt to terminate the lease in 2013 (AR 0031); the

27  Tribe's failure to respond to letters CIWMI sent it between

28  November 2015 and October 2016 (id. at 0032-33); whether the

Tribe timely reviewed planning documents CIWMI shared with it (id. at 0032); whether the Tribe complied with the lease terms (id. at 0032-33); CIWMI's alleged diligence (id. at 0035); and the impact of any delay purportedly caused by the Tribe (id. at 0033.)

In particular, the IBIA found the lease was in effect during the 2013 dispute (id. at 0031); the Tribe's failure to respond to letters did not constitute a breach of the lease or prevent CIWMI from pursuing other steps to build and begin operating the facility (id. at 0031-32); the Tribe timely reviewed the planning documents CIWMI shared with it (id. at 0032); CIWMI's alleged diligence was immaterial to the question of whether it failed to perform within a reasonable time (id. at 0035); and any delay purportedly caused by the Tribe was insignificant compared to the overall delay (id. at 0033.) Considering the foregoing, the IBIA concluded the Tribe did not "fail[] to take actions required by the Lease" or "somehow delay[] [CIWMI] from continuing to pursue the necessary permits or taking the other steps needed to build and begin operating [the] [facility] within a reasonable time."  (Id. at 0032-33.)

The IBIA's conclusion was "based on a consideration of relevant factors and with no clear error of judgment." Rabadi v. U.S. Drug Enf't Admin., 122 F.4th 371, 373 (9th Cir. 2024), cert. denied sub nom. Rabadi v. Drug Enf't Admin., 145 S. Ct. 2846 (2025) (citation modified).  Accordingly, it was not arbitrary and capricious.  See id.; see also Nat. Res. Def. Council, 113 F.3d at 1124 (when agency "consider[s] the relevant factors and

17

1  articulate[s] a rational connection between the facts found and

2  the choice made," it does not act arbitrarily and capriciously).

3          IT IS THEREFORE ORDERED that plaintiff's motion for

4  summary judgment (Docket No. 22) be, and the same hereby is,

5  DENIED.

6          IT IS FURTHER ORDERED that defendants' summary judgment

7  motion (Docket No. 27) and defendant-intervenor's summary

8  judgment motion (Docket No. 28) be, and the same hereby are,

9  GRANTED.

10         The Clerk is directed to enter final judgment in favor

11 of defendants and defendant-intervenor and close the case.

12 Dated:  October 22, 2025

13                                WILLIAM B. SHUBB
                                  UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  18